(No. 23658.—

BESSIE SUCHY *et al.* Appellees, *vs.* JOHN HAJICEK *et al.*—(JOHN HAJICEK, Appellant.)

*Opinion filed October 27, 1936—Rehearing denied Dec. 4, 1936.*

EDWARD H. KUBITZ, for appellant.

VINCENT G. PONIC, (STEPHEN LEE, and JOHN I. MAYER, of counsel,) for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

A decree of the superior court of Cook county, among other things, ordered partition of a parcel of real estate among the legal heirs of Marie Hajicek, deceased, allotting to them their respective portions of the parcel. John Hajicek, a son, prosecutes this appeal.

The pertinent facts disclosed by the pleadings and the evidence are as follows: Jan Hajicek, a resident of Chicago, died on February 20, 1927, leaving him surviving his widow, Marie Hajicek, and their seven adult children—Bessie Suchy, Lillian Novotny, Mary Franta and Bohumil, Charles, Louis and John Hajicek. At the time of his death Hajicek and his wife owned a parcel of real estate in Chicago in joint tenancy. The building on the premises was a two-story structure consisting of three apartments. Similarly, two savings accounts with the Kaspar American State

Bank were in the joint names of Jan and Marie Hajicek. On February 21, 1927, the day following Hajicek's death, one of the two savings accounts, having a balance of $2800, was transferred to the joint names of Marie Hajicek and her son John Hajicek. The other account, with a balance of $2943.50, was transferred in the same manner on April 26, 1927. Deposits were made from time to time in both accounts, and numerous withdrawals were also made, including one of $4900 on September 6, 1927, for the purchase of real estate bonds. As the result of the withdrawals, on the day named one account was closed. Interest was paid to Mrs. Hajicek on these bonds during her lifetime and the money was used by her personally. The transactions incident to the purchase of the bonds and the collection of interest were handled by her son John. After his mother's death, on December 8, 1931, default was made in the payment of the bonds and they were deposited with a bondholders' committee in the name of John. The bank closed in 1932, and the balance on deposit in the account at that time was $461.90. The apartment on the second floor of the building was occupied by Jan and Marie Hajicek, together with three of their children—Bessie, John and Louis—in February, 1927, and the lower apartments were leased. Mrs. Hajicek continued to occupy the upper apartment after her husband's death. Mrs. Suchy and her family and Louis and John Hajicek resided with their mother from February, 1927, until her death, in 1931. So far as the record discloses, no one of these three children contributed to the maintenance of the household during these four years with the exception of John, who paid his mother $50 per month when he was employed. He was, however, unemployed after the year 1929. On September 14, 1927, Mrs. Hajicek conveyed the real estate to one Bartik, an employee of the bank, and he, in turn, five days later, conveyed the property to Mrs. Hajicek and John Hajicek as joint tenants. Mrs. Hajicek executed her deed by mark,

to which Edward Novotny, a son-in-law, and one Cgaas, were witnesses, and William F. Kosobud, an officer of the bank, took her acknowledgment as a notary public. Although John was not present when the deeds were executed, the bank caused them to be recorded and delivered to him. He paid the fee for recording the second deed. Mrs. Hajicek collected the rents for the two lower apartments both before and after the transfer of title and paid the taxes. Following her death, in 1931, Mrs. Suchy and John Hajicek reached an agreement by which the former and her family continued to occupy the upper apartment by paying a monthly rental of $17. Eight days after the mother's death John married the tenant of one of the lower apartments and has since resided there while continuing to collect the rents from the other apartments. For approximately eighteen months Mrs. Suchy and her family resided in the upper apartment and paid the stipulated rental. Thereafter Mrs. Suchy fell in arrears in the payment of rent. On March 20, 1935, John Hajicek instituted a forcible detainer proceeding in the municipal court of Chicago against her and her husband for possession of the apartment in which they lived.

Subsequently, Mrs. Suchy, together with three of her brothers, (Bohumil, Charles and Louis Hajicek,) John Franta, husband of Mary Franta, deceased, and three of his four children, filed a complaint in the superior court of Cook county against John Hajicek. John's wife, a sister, Lillian Novotny, and one of the children of the deceased sister, were also made parties defendant. By their complaint the plaintiffs, appellees here, in addition to the facts previously set forth, charged that their mother executed and delivered the deed to Bartik, previously mentioned, and caused him to execute the deed to herself and her son John because of the confidential relationship existing between herself and her son and in reliance on the blood relationship among the parties, and also because of the trust, reliance and faith reposed in said son. The complaint further

alleged, among other things, that it was expressly understood and agreed by John Hajicek and his mother that he would hold the legal title to the property for the benefit of all the children, and that no consideration for the conveyance was paid by John to his mother or to anyone else. On June 22, 1935, the plaintiffs filed their amended complaint, charging further that the bank accounts were transferred with the intention that they be joint accounts, the consideration of the transfer being a promise by John, on or about February 21, 1927, that he would divide the proceeds of the accounts with his brothers and sisters after the death of their mother. The relief sought was the entry of a decree (1) declaring that John held legal title (a) to the premises as trustee for the plaintiffs, and (b) to the bank accounts and the proceeds of the same as trustee for them; (2) directing him to account to them for all rents collected by him from the premises from December 8, 1931, and for the bank accounts and proceeds from the same date. By his answer John denied the allegations of the complaint and averred that the conveyances were caused to be made by his mother for valuable consideration in order to vest title in him as his own property. He also claimed a gift of the personal property. The cause was referred to a master in chancery, who heard evidence and recommended that a decree be entered in conformity with the prayer of the amended complaint. Objections interposed to the report were overruled and ordered to stand as exceptions. The chancellor overruled the exceptions and entered a decree granting the relief sought.

Additional facts and circumstances appear from the record. Mrs. Hajicek was in poor health at the time of her husband's death, having suffered one or more strokes prior thereto. She was then about seventy years of age, unable to speak English, could neither read nor write and had had no business experience. About noon on February 20, 1927, she and six of her children, including John, as-

sembled at her home. Five of the latter (one died prior to the trial) testified as to what occurred on that occasion. From the testimony of Mrs. Suchy and Louis and Bohumil Hajicek it appears their mother announced that she proposed to appoint one of her children to attend to her affairs and inquired whether the proposed arrangement was satisfactory and met with their approval. All present assented, and Mrs. Hajicek thereupon selected John, stating that he had more time to devote to her affairs because he was unmarried and out of work. Bohumil testified that his mother stated she would let Johnnie take care of things for her and for the children, and, further, that she had sufficient confidence in him to do the right thing by the others. The evidence tends to show that there was no direct reference to the real estate at the family conference. According to John the conversation was to the effect that his mother would transfer the bank accounts in order to facilitate withdrawals of money. In particular, he said that the bank account transfers were made as a matter of convenience, so that he could go to the bank and get money for his mother. Referring to the disposition of the real estate bonds, John stated that renewal bonds were placed in his name about a year before his mother died, adding, "She wanted them in my name so I could draw the interest for her." He also testified: "I never got any rent money before mother died. I paid taxes with mother's money. Mother borrowed money from me whenever she was short." He did not, however, elaborate and referred to no particular amount of money borrowed by his mother at any time or claim that she failed to re-pay him for any sum which she may have borrowed.

William Kosobud, a disinterested witness, had been acquainted with Mrs. Hajicek for more than forty years. From his testimony it appears that upon the request of the son John he called at the home of Mrs. Hajicek prior to the transfer of the accounts; that the latter said she needed money from time to time, and that since her husband was

dead and she herself was bedridden she would transfer the accounts to John so that she could obtain money; that later, in September, at the request of John, the witness again went to the home; that on this occasion Mrs. Hajicek stated that she wanted her property transferred in order to avoid the necessity of probate proceedings after her death and that she desired to accomplish this result in the simplest and easiest manner possible. The witness explained methods of accomplishing her purpose and recommended that she transfer the real estate to joint tenancy. When he informed her that it depended entirely upon the party to whom the property was transferred to make the desired distribution of the estate, Mrs. Hajicek expressed complete confidence that John would divide her property among her surviving children. There is an immaterial discrepancy as to where the deed was executed. It is conceded, however, that Mrs. Hajicek executed her deed to Bartik on September 14, 1927. Kosobud testified it was executed in an automobile in front of the bank. Mrs. Novotny, one of the defendants, testified that it was executed inside the bank. She stated further that her mother said she wanted the title placed in John's name, as otherwise he would receive nothing.

To obtain a reversal of the decree, John Hajicek, the appellant, makes the contention, among others, that he did not occupy a confidential fiduciary relation to Marie Hajicek, his mother, and that, in consequence, no burden rested upon him to establish the fairness of the transactions assailed. The appellees, on the other hand, to sustain the decree, maintain that the pleadings and the proof present a case of a constructive trust originating in a fiduciary relation, and that such relationship required the appellant to prove good faith on his part.

The principles governing this case are well settled. Constructive trusts are divided into two general classes: one where actual fraud is considered as equitable ground for raising the trust, and the other consisting of those cases in

which the existence of a confidential relation and the subsequent abuse of the confidence reposed is sufficient to establish such trust. (*Catherwood* v. *Morris,* 345 Ill. 617; *Neagle* v. *McMullen,* 334 id. 168; *Miller* v. *Miller,* 266 id. 522.) It is true, as the appellant insists, that when a donee by deed has received realty under an oral promise to hold it for the donor or another, and has, in reliance on the Statute of Frauds, refused to perform the promise and has retained the property for his own use, relief by way of a constructive trust is generally denied. (3 Bogert on Trusts and Trustees, sec. 495; *Catherwood* v. *Morris, supra; Braidwood* v. *Charles,* 327 Ill. 500; *Lantry* v. *Lantry,* 51 id. 458.) A recognized exception to the general rule prevails, however, where a confidential relationship exists between the grantor and grantee. (*Housewright* v. *Steinke,* 326 Ill. 398; *Kochorimbus* v. *Maggos,* 323 id. 510; *Kern* v. *Beatty,* 267 id. 127; *Miller* v. *Miller, supra; Ward* v. *Conklin,* 232 Ill. 553; *Stahl* v. *Stahl,* 214 id. 131.) Courts have been reluctant to adopt a definition applicable to all possible cases in which the fiduciary or confidential relation might arise. In general, a fiduciary or confidential relationship exists where trust and confidence are reposed by one person in another, who, as a result, gains an influence and superiority over the first. (*Pulfrey* v. *Wid,* 340 Ill. 553; *Duncan* v. *Dazey,* 318 id. 500; *Neagle* v. *McMullen, supra; Niland* v. *Kennedy,* 316 Ill. 253.) In particular, where, by reason of kinship, business association, disparity in age, or physical or mental condition, or other reason, the grantee is in an especially intimate position with regard to the grantor and the latter reposes a high degree of trust and confidence in the former, a confidential relationship may be said to exist. The mere existence of such a connection prohibits the one trusted from seeking any selfish benefit for himself during the course of the relationship and affords a basis for fastening a constructive trust upon the property in the hands of the grantee, irrespective of his

oral promise to use it for the benefit of another. (3 Bogert on Trusts and Trustees, sec. 496.) Where a fiduciary relation exists, the burden rests upon the grantee or beneficiary of an instrument executed during the existence of such relationship to show the fairness of the transaction, that it was equitable and just, and that it did not proceed from undue influence. *Addis* v. *Grange,* 358 Ill. 127; *Allen* v. *McGill,* 311 id. 170; *Pillsbury* v. *Bruns,* 301 id. 578; *Dowie* v. *Driscoll,* 203 id. 480; *Thomas* v. *Whitney,* 186 id. 225.

It may be conceded, as the appellant maintains, that he was not instrumental in causing the conveyance to be made. That sole fact, however, cannot give vitality to a deed obtained in the manner and under the circumstances disclosed by the record in this case. Where it appears that relations of trust and confidence obtain between parties to a transaction like this, the dominant party, who has profited thereby, must rebut the presumption of fraud by clear and convincing proof that he has exercised good faith and has not betrayed the confidence reposed in him. (*Commercial Merchants Bank* v. *Kloth,* 360 Ill. 294; *Dowie* v. *Driscoll, supra.*) In an analogous situation this court held that a fiduciary or confidential relationship existed between a mother and her son, who was the dominant party, and that the presumption of his influence over her was strong. (*Stahl* v. *Stahl, supra.*) It is not essential that the undue influence vitiating the transfer be deemed fraudulent, but it is sufficient if the influence arises out of the fiduciary or confidential relations.

Mrs. Hajicek's appointment of her son to manage her business affairs clearly indicated that she reposed unusual confidence in him. She, it appears, was on good terms with all her children, and especially, Mrs. Suchy, who nursed her mother and ministered to her personal needs. Evidence is wanting that even tends to indicate she desired to make a permanent disposition of her property so as to exclude six

of her children, or that she preferred the appellant to such an extent that she intended to reward him above the others. The fact that Mrs. Suchy was indebted to her mother is of no significance. Likewise, Mrs. Novotny, one of the defendants, and other children, were indebted to Mrs. Hajicek. In no single instance, however, does it appear that such indebtedness exceeded $300. Although the answer of the appellant averred that he paid valuable consideration for the conveyance to him, he failed to show any consideration whatever moving from himself to his mother for the transfer of either the real estate or the bank accounts. Moreover, he specifically admitted that he did not pay her any money for the property. The complaint charged, and there was proof, that a confidential or fiduciary relation obtained between Mrs. Hajicek and the appellant. The existence of this relationship created a presumption of influence which cast on him the burden of showing that he did not abuse or betray the confidence reposed in him. This the appellant wholly failed to do.

The question remains whether the transfer of the savings accounts was a valid gift *inter vivos*. It is essential to a gift *inter vivos* that it be absolute and irrevocable, that the donor part with all present and future dominion and control over the property, that the gift go into effect at once and not at some future time, and that there be a delivery to the donee and such a change of possession as puts it out of the power of the donor to re-possess himself of the property. (*People* v. *Csontos*, 275 Ill. 402.) These elements are wanting in the present case.

The decree of the superior court is affirmed.

*Decree affirmed.*