William N. Duffield, Administrator of the Estate of Arthur Orth Rader, Deceased, Appellee, v. Grace A. Rader, Individually and as Executrix of the Last Will and Testament of Florence Rader, Deceased, Appellant.

Gen. No. 9,153.

Opinion filed January 18, 1937.

PAUL J. GRAHAM, of Aledo, and WOOD & McNEAL, of Moline, for appellant.

ROSWELL B. O'HARRA, of Macomb, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

On December 15, 1931, this suit was instituted by William N. Duffield, administrator of the estate of Arthur Orth Rader. His bill alleged that his intestate died on May 7, 1927; that previous to his death he was possessed of $12,153.34, which he desired to invest in real estate in Mercer county, Illinois; that he appointed his sister, Florence Rader, his agent to carry out such purpose and delivered to her said sum of money with

specific instructions to use said money in the purchase of the old home farm; that Florence Rader received said money as such agent but violated her instructions and failed and neglected to carry out her principal's directions and instead of purchasing said farm, loaned the money to her brother Fred and as security for the repayment thereof on or before May 17, 1933, received from Fred a conveyance of certain real estate described in the bill. The bill then alleged the death of Florence Rader on March 8, 1931, the admission of her will to probate, the appointment of Grace A. Rader as her executrix, to whom she devised and bequeathed all her property, and the inventorying of the conveyance from Fred as an asset of her estate. The bill then alleged that said conveyance from Fred was in fact a mortgage and held by Grace in trust for the benefit of complainant as administrator of the estate of Arthur Orth Rader and prayed that the court so decree. Fred Rader defaulted. Grace A. Rader, individually and as executrix of the will of Florence Rader, answered denying that Arthur Orth Rader appointed Florence Rader as his agent for the purpose of investing the amount mentioned in the bill or any other sum for the purpose stated in the bill, admitted that Florence received from her brother a certain sum of money which she loaned to Fred and as security for its repayment Florence received a deed from Fred to the premises described in the bill. The answer then avers that the money which Florence received from her brother, Arthur Orth Rader, was received by her as a gift and after its receipt no one other than Florence Rader had any interest therein. The cause was referred to the master, who took the evidence and reported that the material allegations of the bill had been proven and recommended a decree in accordance with the prayer of the bill. The chancellor overruled all exceptions to the master's report, approved and confirmed the findings and conclusions of the master and entered a de-

cree directing Grace A. Rader to forthwith execute and deliver to the complainant a conveyance of the real estate which Fred had conveyed to Florence and directing Fred to pay the specified principal sum and interest to the complainant. From this decree an appeal to this court has been prosecuted.

The evidence discloses that Charles Rader, the father of Arthur Orth Rader, Florence Rader and Grace Rader, owned 80 acres of land in Mercer county upon which he lived at the time of his death. He died intestate prior to the death of Arthur Orth Rader and left him surviving besides Arthur, Florence and Grace four other children and two grandchildren, who were children of a deceased daughter. Florence, called "Flo" by her intimates, was the oldest daughter. She never married but as the family grew up and scattered, she remained at home, took care of the younger children and waited upon her parents until their death and finally she was left alone on the home place. Grace, a younger sister, was a school teacher and in 1927 was teaching a school north of New Boston about 10 miles distant from the home place. She returned each evening except when the roads were bad or storms made it impossible for her to travel. Arthur Orth Rader, appellee's intestate, known as "Orth" by his family and friends, went to California and accumulated considerable wealth. In the fall of 1926 Orth was visiting his relatives in Mercer county and found his sister Florence living on and managing the home place. He returned to California and from his home in Sacramento, on May 2, 1927, he sent his sister the following letter:

"Sacramento, California,
May 2, 1927.

"Dear Sister Flo:

I received your letter sometime ago, but have been too sick to answer. I am enclosing two checks for

$6,000.00, each, for you to use in buying the old home place, if it can be bought for yourself. I want to be sure that you got this before anything happened to me. Have Fred take you to Aledo and help you through with it.

"I thought the $12,000.00 would take care of it with your share out of it. Julia is writing this letter for me, as I am too sick to write. I received Fred's letter a long while ago, but didn't answer because I feel too bad to write. No more now.

"Julia will write you tomorrow.

"With love,

Orth"

The evidence is further that four days after sending his sister the letter of May 2, 1927, Orth died at his home in California. He was married but had no children. Upon the hearing Grace Rader produced the letter of May 2, 1927, and called as a witness by appellee, testified that when she returned to the home place from her school in the evening of May 6, 1927, her sister Florence showed her the letter and drafts and on that day or within a day or two thereafter the drafts were deposited to the credit of Florence in a savings account at a bank in Aledo. She also testified to an incident that occurred at the time of Orth's visit to the home place the preceding fall. At that time this witness testified that Florence was getting ready to make a kettle of soap and while she was in the house "Orth stood there looking at the project Florence was going to work up and it touched him and he broke down and cried saying: 'I am so sorry to see Flo working so hard' and he turned to me and said: 'Now Grace, I am going to provide for Flo.' He did not want her to come to want and stated that she had been a mother to all of us and she was worthy of being taken care of and he was going to provide for her."

It further appears from the evidence that the two checks referred to in the letter of May 2, 1927, were drafts issued by a bank in California, drawn on the National City Bank of New York and were payable to the order of Florence Rader by whom they were indorsed and delivered to the Farmers National Bank of Aledo, Illinois, on May 6, 1927, and this bank, on that day issued to Florence Rader its four per cent certificate of deposit for $12,000 payable to Flo Rader, 10 months after date. On February 23, 1928, Florence loaned the $12,000 to her brother Fred and subsequently received from him as security therefor a deed to a farm which Fred owned.

Harry Prouty testified that he was 60 years of age, lived three-quarters of a mile from the Rader farm, went to school with Orth Rader and knew him well; that on the day before Orth started back to his home in California, in the fall of 1927, Orth came to the home of this witness and told him that he had means and could leave Florence with enough to take care of her and still leave his wife with plenty of means; that most of the children had homes of their own; that Florence had had two opportunities to have a home of her own but her folks prevailed upon her to give those opportunities up and help with the rest of the family and he felt she should have had the home left to her, but it wasn't done that way; that he had means to help her and she would be taken care of; that no one could be forced to sell his or her interest in the home farm but he was going to send money to his sister which she could use as she pleased. Mrs. Harry S. Carlton also detailed a conversation which she had with Orth just before he returned to California for the last time in which Orth told her that he thought Flo was over-worked and "knowing my closeness to her thought I would be interested in knowing that he felt he was able to take care of her, that he had been blessed financially

in making money, knew this was his last visit here as he was not well and could die easier knowing that Florence was taken care of.'' There is evidence that Glenn, one of the brothers who had an undivided interest in the home place, could not be located and that the 80 acres was worth in 1927 approximately $200 per acre and that Orth told Florence before he went to California the last time that if he couldn't come back he would send her enough money to pay $200 per acre for the land and that he wanted Florence to pay the heirs off and get a deed for the home place, and if they couldn't locate Glenn they could put the money in the bank for him.

The foregoing is a fair résumé of the material evidence in this record. It is the contention of appellant that this evidence does not establish an agency and trust but a completed, executed gift. Counsel for appellee insist that this evidence discloses that Orth sent his sister $12,000 to invest in the home place; that until it was so invested it was Orth's money in the hands of Florence as his agent, and not having been so invested before his death, she held it in trust for the benefit of his estate and that into whatever form the money went, it was still impressed with the trust. Counsel for appellee further state that there is no claim in this court and never has been that the money was to be invested for Orth Rader. His bill of complaint, however, charges that Orth Rader had, in his lifetime, the sum of $12,000 of his own money which he was desirous of investing in real estate in Mercer county, Illinois; that to invest in said real estate he appointed his sister to carry out such purpose and delivered to her as his agent said money with specific instructions to use said money in the purchase of the old home farm and she, Florence Rader, received said sum with directions to purchase said farm from the owners thereof. The decree which we are reviewing found specifically that ''in

his lifetime Arthur Orth Rader had $12,000.00 of his own money which he was desirous of investing in real estate in Mercer County, Illinois; and to invest in said real estate he appointed Florence Rader, his sister, his agent, and to carry out such purpose he delivered to Florence Rader, as his agent, $12,000.00 with specific instructions to use said money in the purchase of the old home farm.'' In our opinion, if the bill was not meant to charge that Orth was desirous of investing $12,000 of his own money in Mercer county real estate for the benefit of himself, the pleader used the wrong words to convey his meaning. The allegation is that Florence Rader was appointed agent of Orth Rader to invest Orth's money in Mercer county real estate. If the money was not to be invested for Orth, the principal, then it must have been sent by the principal to the agent to be invested by the agent for the benefit of the agent, but if this was what the pleader meant to charge, he was unfortunate in the use of the word investing because ''in all cases of investment, although the specific character of the property is changed, the title and control remains with the investor.'' Words and Phrases, Vol. 4, page 3756.

In our opinion the evidence does not show that Orth Rader constituted Florence Rader his agent for any purpose. He stated orally that he thought the home place should have been left to his sister Florence and said he was going to send his sister money which she could use as she pleased; that he was not well, had been blessed financially and would die easier knowing she was taken care of. In order to carry out this intent, he procured two drafts, each for $6,000 and delivered them, by mail, to this sister and in the letter which accompanied the drafts said: ''these are for you to use in buying the old home place, if you can, for yourself. I want to be sure you got this before anything happened to me.'' In our opinion the meaning which

Orth wished to convey to his sister by the use of these words was that he wanted her to receive this money, not the home farm, because he said he didn't know whether the farm could be bought or not. He wanted her to have the money before he died and expressed the desire that if the home place could be bought, he wanted Florence to buy it for herself and sent her $12,000 for that purpose. There is nothing in this letter which would indicate that Orth retained any interest in this money or any part of it or that Florence was to do anything for Orth or that Orth considered himself as principal and Florence his agent for any purpose. Orth knew the interest of the missing brother Glenn could not be obtained, had stated his intention of giving Florence this money and carried out that intention by sending it to her and completing his intended gift to her.

As stated in *Smith v. Baxter,* 239 Ill. App. 453, the crucial question in controversies concerning gifts is that of delivery and the quo animo it was done. In the instant case, as in the *Smith* case, *supra,* the delivery of the money was completed and the representative of the recipient insists it was a gift and in our opinion the evidence in this record supports this claim. The brother's desire that if the home place could be bought he wanted his sister to buy it for herself is not in our opinion a condition precedent which prevented the vesting of the title to this money in Florence, the sister. Orth did not, as we construe his letter, attach or intend to attach any condition to the vesting of title in this money in his sister.

It is essential to a gift *inter vivos* that it be absolute and irrevocable, that the donor part with all present and future dominion over the property given; that the gift go into effect at once and not at some future time, and that there be a delivery to the donee and such a change of possession as to put it out of the power of

the donor to repossess himself of the property. *Suchy v. Hajicek,* 364 Ill. 502. We believe all of these elements are shown to be present in the instant case and the chancellor erred in not entering a decree dismissing the bill for want of equity.

The decree of the circuit court of Mercer county is reversed and the cause remanded with directions to dismiss the bill for want of equity.

*Reversed and remanded with directions.*