(No. 26680.—

Henry M. Doner, Appellant, vs. Phoenix Joint Stock
Land Bank of Kansas City et al., Appellees.

*Opinion filed November 18, 1942.*

MARY C. MARTIN, F. MARK MILLER, and MURRAY & MURRAY, for appellant.

JOHN J. BAKER, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is a direct appeal from the circuit court of Shelby county. The purpose of the suit was to declare a constructive trust in certain lands in that county in favor of plaintiff. The appeal is from orders entered on a motion to strike plaintiff's second amended complaint. Defendants filed a motion in this court to dismiss the appeal for want of a final, appealable order. The motion was taken with the case.

The first order, dated October 7, 1941, declared in substance that the motion made by the defendants to strike the second amended complaint was allowed and the complaint, as amended, stricken. Plaintiff did not take leave to file an amended complaint or have his election to stand on his pleading noted of record. The next order entered was November 10, 1941, the material parts of which are: "Motion by defendants to dismiss suit. It appearing to the court that on October 7, 1941, the second amended complaint, as amended, was stricken by order of the court, said motion is sustained and the suit is dismissed at the costs of the plaintiff. Clerk will forthwith notify counsel for plaintiff of the entry of this order. Stricken."

On the fifth of January following, plaintiff filed a notice of appeal in which it is said: "Plaintiff hereby appeals from the final order entered by the circuit court of Shelby county, Illinois, in the above entitled cause whereby it was ordered, adjudged and decreed that the second amended complaint, as amended, in this cause be dismissed for want of equity and that plaintiff pay the costs of said proceeding."

It must be conceded that the order of October 7, sustaining the motion to strike and striking the complaint, when standing alone, cannot be considered as a final appealable order. (*Barber* v. *Wood,* 318 Ill. 415; *Trebbin* v. *Thoeresz,* 316 id. 30; *Williams* v. *Huey,* 263 id. 275.) It is equally true that there is a marked difference between

an order striking a case from the docket, which is not final, (*Frederick* v. *Connecticut River Savings Bank*, 106 Ill. 147,) and an order dismissing the suit and assessing costs against the plaintiff, as was entered in this case, after the order of October 7.

The contention that the order dismissing the suit was not on the merits because the record fails to show that plaintiff elected to stand by his complaint cannot be sustained. If he had wished to amend further he should have asked leave to do so. By omitting to do that he elected to stand by his complaint and the proper order was for its dismissal. (*McDowell* v. *Cochran*, 11 Ill. 31.) While an order which merely sustains a motion to strike is not final and appealable, where a final order of dismissal of the suit follows the ruling on the motion to strike, it is sufficient evidence of an election to stand by the complaint. (*Hansen* v. *Independent School District,* 186 N. W. (Iowa) 922, 21 A. L. R. 260.) The notice of appeal in this case is sufficient to show that the appeal is from both the ruling on the motion to strike and from the final order dismissing the suit. (*First Title & Securities Co.* v. *United States Gypsum Co.* 233 N. W. (Iowa) 137, 73 A. L. R. 1196.) The merits of the case are properly before us for consideration.

The second amended complaint, as amended, alleged, in substance, that on March 30, 1939, and thereafter, plaintiff was the owner and in actual possession of the 101.5 acres of land in Shelby county specifically described; that plaintiff, up to the time of filing the complaint, was occupying said premises as a homestead; that plaintiff was indebted to Liberty Joint Stock Land Bank, and a mortgage to secure said indebtedness was, on March 30, 1939, in process of foreclosure by Phoenix Joint Stock Land Bank as assignee of the Liberty Joint Stock Land Bank; that pursuant to the foreclosure decree the Phoenix Joint Stock Land Bank bid in the property at the sale on March 30,

1939, for $4000 and was entitled to a master's deed subject to the rights of redemption; that after the date of the sale and before March 30, 1940, the purchaser repeatedly advised plaintiff that he would be allowed to redeem at any time within fifteen months and communicated such advice both verbally and by letter dated August 30, 1939, which was attached to the complaint as Exhibit "A;" that he relied upon such advice and, acting upon it, he failed to redeem on or before March 30, 1940, and on or before June 30, 1940, the purchaser agreed to extend the time to July 1, 1940; that the Shelby Loan and Trust Company was appointed receiver of said real estate and continued as such to and including July 5, 1940; that defendant L. C. Westervelt was the trust officer of Shelby Loan and Trust Company, and, as such, transacted all the business of the receivership; that by reason of his transaction of the receivership business and also his repeated dealings between the parties, there existed, between the plaintiff and said Westervelt, a fiduciary relationship; that on June 24, 1940, Westervelt represented to plaintiff that he would redeem the property if plaintiff would agree to deed to said Westervelt an undivided one-half interest in and to the oil and gas in, under, and that might be produced from, said real estate, and would agree further to pay said Westervelt $2500 within two years, and that plaintiff accepted and entered into said agreement; that said real estate was in an area of intensive oil activity and that the oil and gas rights had a value of $7500; that plaintiff, by reason of his agreement with Westervelt, refused *bona fide* offers from others of a similar nature to redeem the property for plaintiff; that on the day before the expiration of the period of redemption Westervelt advised plaintiff that other parties who were interested with him refused to go through with the contract, and plaintiff requested Westervelt to call the purchaser and request an extension of time to redeem, which Westervelt did, and obtained an extension to July 2;

that Westervelt then agreed to assist plaintiff in working out the terms of the agreed transaction and Westervelt contacted other parties to arrange for the redemption according to the terms of the aforesaid agreement; that Westervelt, in an attempt to cheat and defraud plaintiff, tendered the redemption money himself to the Phoenix Joint Stock Land Bank and caused the title to be conveyed to his nominee, Charles H. Hulick, Sr., and both Hulick and Westervelt have since refused, although often requested, to convey the premises to plaintiff subject to a reservation of one half the oil and gas rights; that Hulick and his wife have since conveyed undivided interests to various named defendants on the directions of Westervelt, and that said defendant grantees knew, and were charged with notice of, plaintiff's rights in the premises when they accepted the conveyances; that subsequent to the acquisition of title by the defendants the value of the oil and gas rights has steadily mounted, that a test well in the immediate vicinity has been drilled and is producing oil in commercial quantities; that Westervelt is of limited financial responsibility and plaintiff is without adequate remedy except in equity; and that plaintiff has been and still is ready and willing to pay the sum of $2500, as provided in his agreement and within the time fixed thereby. Plaintiff prayed that defendants, Westervelt and his grantees, be decreed to hold their respective interests in said real estate as trustees for plaintiff and that they be decreed to convey to plaintiff, reserving a one-half interest in the oil and gas, upon payment to defendants of $2500, at the time and in the manner to be fixed by the court, and that plaintiff have such other and further relief as may be equitable.

The joint and several motion to strike the complaint was based on the following grounds: (1) that the complaint is vague, indefinite and uncertain and does not allege facts sufficient to entitle plaintiff to the relief sought; (2) that the alleged promises to extend the time to redeem are not

binding on defendants; (3) that the verbal agreements to extend the time are contrary to the Statute of Frauds, and that the letter marked exhibit "A" shows a positive refusal to extend the time for redemption; (4) that the allegations of a fiduciary relationship are conclusions of the pleader; (5) that the alleged agreement of Westervelt to redeem the premises for plaintiff is in violation of the Statute of Frauds; (6) that plaintiff makes no offer to do equity and does not tender the $2500.

The general order of dismissal rendered all the issues thereby raised *res judicata*. (10 R. C. L. 476; *Oates v. Morningside College*, 252 N. W. (Iowa) 783, 91 A. L. R. 563; *Sattenstein v. Earl*, 328 Ill. 148.) On this appeal the only errors assigned and argued are that the court erred in sustaining the motion to strike and in striking the complaint, and in dismissing the suit at plaintiff's costs. Every issue raised by the motion to strike is, therefore, before this court insofar as the same is argued. All facts well pleaded, with all reasonable intendments, being taken as true, in accordance with the principles of construction enjoined by the Civil Practice Act, our decision must rest on the sufficiency of the second amended complaint, as amended, to state a cause of action.

In answer to the contention of counsel for appellees, that there are no allegations of fiduciary relationship between appellant and Westervelt, but only conclusions of the pleader, it may well be conceded that the allegation that, by reason of Westervelt's transaction of the business of the receivership and the repeated dealings between the parties, there existed a fiduciary relationship, is a conclusion when standing alone. We must, however, consider the pleading as a whole and not its disconnected parts. The further allegation is specific that Westervelt offered to redeem the property if appellant would agree to deed him an undivided one-half interest in the oil and gas and pay him $2500 within two years, and that appellant relied on

the representations and promises and agreed to do so. At whose instance the agreement was initiated the pleading does not disclose. There can be no doubt, however, from the allegations, that Westervelt undertook to act for appellant as his agent, for which action Westervelt was to be paid.

The rule is that the relation of principal and agent is a fiduciary one. (*Quinn* v. *Phipps,* 113 So. (Fla.) 419, 54 A. L. R. 1173; *Dennis* v. *McCagg,* 32 Ill. 429.) The allegations in the complaint show an unequivocal act of agency by Westervelt. Whether he volunteered or agreed in response to appellant's efforts to save his property is immaterial. By assuming to act for appellant he took upon himself certain obligations, among which was the duty not to deal with the subject matter of the agency for his own advantage. (*Trice* v. *Comstock,* 121 Fed. 620.) We are not called upon to say whether the proof would establish such agency because the ultimate facts so pleaded are admitted.

It is as conclusively shown by the complaint that Westervelt not only failed to perform his agreement but obtained further time from the Phoenix Joint Stock Land Bank within which to acquire title and that he obtained the extension at appellant's request, from which the reasonable inference is that he obtained it for appellant. Before the extended period had elapsed he tendered the redemption money to the land bank and caused the title to be conveyed to his nominee which was the same, in effect, as though he had the conveyance made to himself.

The legal effect of the transaction for his own benefit was the creation of a constructive trust. The rule in this State is established by an unbroken line of decisions that anyone occupying a fiduciary relation, such as an agent, trustee, partner, guardian, conservator, attorney, executor or administrator, cannot deal on his own account with any thing or the persons falling within that trust relationship.

(*Dennis* v. *McCagg, supra; Suchy* v. *Hajicek*, 364 Ill. 502; *Pulfrey* v. *Wid*, 340 id. 553; *Pope* v. *Dapray*, 176 id. 478; *Kochorimbus* v. *Maggos*, 323 id. 510.) If anyone occupying such a relation deals with the subject matter of the relationship and thereby gains an advantage to himself he will be deemed guilty of fraud, either actual or constructive, depending upon his intent and purpose. If he obtains title to property by virtue of his relation, equity converts him into a trustee of the legal title. Constructive trusts are raised by equity for the purpose of working out right and justice where there was no intention of the party to create such a relation, and often directly contrary to the intention of the party holding the legal title. (*Kochorimbus* v. *Maggos, supra; Roche* v. *Roche*, 286 Ill. 336; *Reed* v. *Peterson*, 91 id. 288.) The fact that Westervelt used his own funds to acquire the title in question does not alter the application of the rule in this case. It must be assumed that he did so by virtue of his agency and for the benefit of appellant whose trustee he made himself. (*Dennis* v. *McCagg, supra.*) The modern current of authority both here and in England is that if an agent undertakes to negotiate for land for his principal and purchases the property with his own funds and thereby acquires the title, he becomes a constructive trustee for the principal's benefit. See *Quinn* v. *Phipps, supra*, and cases therein cited, and *Trice* v. *Comstock, supra.*

To enumerate here the various circumstances which may give rise to a constructive trust would be needless repetition of what this court has frequently outlined. It is sufficient to state one condition that particularly applies to the facts in this case. Where it appears, as in this case, that the relation of trust and confidence existed by reason of the agency, the agent who has profited thereby has the burden of rebutting the presumption of fraud by clear and convincing proof that he has not betrayed the confidence reposed in him. (*Suchy* v. *Hajicek, supra; Pulfrey* v. *Wid, supra.*) Where one occupying such a relation to

another, through any questionable means, gains something for himself, which in equity and good conscience he should not be permitted to keep, equity will raise a constructive trust and compel him to turn it over to the one equitably entitled to it, or to otherwise execute the trust as the court may direct. (*Miller* v. *Miller*, 266 Ill. 522; *Kochorimbus* v. *Maggos, supra; Kern* v. *Beatty*, 267 Ill. 127; *Dennis* v. *McCagg, supra; Casey* v. *Casey*, 14 Ill. 112; *Pope* v. *Dapray, supra.*) Defendant Westervelt has made no effort to deny the relationship nor to establish by any proof that he has not betrayed his trust. On the contrary he has, by his motion to strike, admitted such facts to be true. Appellant asks that he be decreed to have had the title taken by his nominee in trust for appellant and the allegations are that none of the defendants are *bona fide* holders for value. As to such defendants, proof that they were innocent purchasers for value is indispensable to defeat the trust. (*Smith* v. *Wright*, 49 Ill. 403; *Dennis* v. *McCagg, supra.*) The temptation of self-interest is too powerful and insinuating to be trusted and it must be removed by taking away the right to hold the property acquired under the circumstances shown by the complaint. The allegation that each of the defendants, at and before the time they acquired their aforesaid purported conveyances, or paid the consideration, if any, for the execution of the same, knew of the rights of the plaintiff in the premises and were charged with notice of said rights, was an allegation of ultimate fact and not a conclusion, as argued by appellee.

Appellee contends that the only allegations of fraud are conclusions of the pleader. With that we cannot agree. It is unnecessary to construe the letter from the Phoenix Joint Stock Land Bank to appellant, which is susceptible of opposing constructions placed upon it. It is not controlling in any particular. It is clear, from the complaint, that Westervelt, as agent of appellant, obtained an extension of time for appellant to redeem. It is true the extension agreement was oral. Nevertheless, a verbal agree-

ment to extend the time for redemption from a judicial sale is valid and not affected by the Statute of Frauds. (*Ogden* v. *Stevens*, 241 Ill. 556; *Nichols* v. *Otto*, 132 id. 91.) Courts will enforce such agreements even though the redemption period has expired when the agreement to extend is entered into. *Dennis* v. *McCagg, supra.*

Appellee's contention that only appellant and his creditors had a right to redeem and that no redemption could be made by tendering the money to the purchaser cannot be seriously entertained. Where a purchaser at a foreclosure sale agrees with the equity owner to extend his time for redemption beyond the statutory period, it is obvious that the parties do not intend that the formalities of a statutory redemption are to be observed. The practice, in such cases, is for the purchaser to perfect his title through a master's deed and then convey to the mortgagor upon payment of the amount to which the purchaser is entitled. That is what was done by Westervelt, if the complaint with all its reasonable intendments is properly considered. We can infer that the mortgagee would give only the mortgagor the extended right to redeem, when the oil and gas rights had so greatly inflated the value of the land. We cannot assume that the purchaser would have granted such a concession to Westervelt had he not been pretending to acquire the title for the mortgagor.

It was not necessary, under the circumstances, for appellant to tender the $2500 because, under the agreement, appellant has two years in which to pay it. In his complaint, appellant tendered payment in pursuance of the contract. *Blunt* v. *Tomlin*, 27 Ill. 92; *St. George* v. *Bender*, 342 id. 296.

For the above and foregoing reasons the judgment of the trial court is reversed and the cause remanded, with directions to deny the motion to strike.

*Reversed and remanded, with directions.*