(No. 24937.—

MARION FELIX JONES, Appellant, *vs.* BENJAMIN BATES FELIX *et al.* Appellees.

*Opinion filed October 13, 1939—Rehearing denied Dec. 6, 1939.*

HUBBARD, BAKER & RICE, (ALVIN GLEN HUBBARD, of counsel,) for appellant.

TAYLOR, MILLER, BUSCH & BOYDEN, (FRANCIS X. BUSCH, PRESTON BOYDEN, and STEPHEN A. MITCHELL, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant filed a bill in the superior court of Cook county seeking to have what she alleged to be her rights, fixed in certain property in the complaint described. The cause was referred to a master and much evidence taken. The master reported recommending that the bill of appellant be dismissed. This report was adopted and the complaint dismissed for want of equity. The cause is here on direct appeal as a freehold is involved.

By her complaint, appellant alleges that Benjamin Franklin Felix, her grandfather and father of Benjamin B. Felix,

had proposed during his lifetime to give appellant certain real estate and personal property. The former was property known as the "warehouse" property, also known in this record as lots 36 to 43 and the north half of lot 44. The other real estate was the homestead at 555 N. State street. The personal property claimed included furniture and personal effects in the homestead.

By the proved averments of the complaint and answer and uncontradicted testimony, the following facts were established: Benjamin Franklin Felix, known as Franklin Felix, complainant's grandfather, had expressed, during his lifetime, a desire to give to appellant, who is the daughter of defendant Benjamin B. Felix (referred to in the record as B. B. Felix) these certain properties. It also appears that on September 17, 1917, Franklin Felix executed two deeds to defendant Benjamin B. Felix, conveying his interest in the warehouse, which amounted to three-fourths thereof, and the residence at 555 N. State street, reserving to himself a life interest. He died December 22, 1917. At the time of his death his interest in the residence was subject to a $20,000 mortgage. During that year Franklin Felix, defendant Benjamin B. Felix, Harriet Felix, mother of appellant, and appellant were living together in the same house. Appellant was married in 1919 and continued for some years after to reside with the family. Later, Harriet Felix and Benjamin B. Felix became estranged and separated. In 1920, they executed a separation agreement by which Harriet Felix was paid $400 per month and released all dower right in the real estate of Benjamin B. Felix. In 1924, another separation agreement was made, and a third was made in 1926. As one of the terms of this last agreement, as part of a property settlement looking to a divorce, Felix deeded to appellant an undivided one-fourth interest in the warehouse. Through error in description lot 43 and the north half of lot 44 were omitted. Later, Benjamin B. Felix made to appellant a quitclaim deed to the omitted

portion of the warehouse property. On the hearing it developed that he had deeded his interest in the warehouse property to a third party, though he stated in court, and offered in his answer, to procure title for appellant in the omitted property. Sometime after the property settlement of 1926, Harriet and Benjamin B. Felix were divorced. In 1936, Felix married Irene Hallberg, who had been his secretary. During the next year this suit was filed. The testimony in the record, including correspondence between them, showed Benjamin B. Felix and appellant, his daughter, to be, prior to his second marriage, very close and devoted to one another.

The contested features of the case center around the allegations in the complaint that appellant's grandfather attempted to deed this property to appellant but was dissuaded therefrom by defendant Benjamin B. Felix and by Harriet Felix, his then wife. The testimony of appellant and Harriet Felix was to the effect that the grandfather insisted upon transferring this property to appellant and was dissuaded only by the promises of Benjamin B. Felix and Harriet Felix that the property would be held for the appellant and given to her at the time of the death of the survivor of Benjamin B. Felix and Harriet Felix. Defendant Felix declares no such promise was made, but that he had intended, until the time this suit was started, to remember his daughter substantially in his will, and that he had since included her as devisee of a substantial amount of property.

The answer charges a conspiracy on the part of Harriet Felix and her daughter, the appellant, to rob him of his property. On the other hand, appellant charges that Benjamin B. Felix is entirely under the domination and control of Irene Hallberg Felix, his present wife, and that she has procured the making of a will cutting off appellant entirely, in addition to procuring from him a large amount of property. These are the contested questions of fact

heard by the master and reported by him to the chancellor with conclusions thereon.

It appears from the undisputed evidence that Franklin Felix had been at one time engaged in the manufacture of sponge rubber, at which time the defendant Benjamin B. Felix was following another pursuit. About 1902, the firm of Felix & Marston was dissolved. There is much evidence in the record that the elder Felix, about that time, was failing mentally following an apoplectic seizure. In 1906, he asked Benjamin B. Felix to become interested with him in a company then engaged in experiments pertaining to sponge rubber products. The business of the concern had gone badly. Benjamin B. Felix succeeded in obtaining a personal loan of $10,000, with which he reorganized the company under the name of Featheredge Rubber Company. The stock and business of the company was turned in at a value of something over $15,000, and ninety-nine per cent of the Featheredge Rubber Company stock was issued to Benjamin B. Felix, who took over his father's personal liability to the bank and losses in the business, and thereafter built up a substantial business. Appellant's complaint alleges that her father, for years, recognized the obligation to make the transfer of the property involved to her, and that she was consulted about the disposition of the residence property and a later disposition of the business.

The answer filed denies the material allegations of the bill except as to the deed which defendant Felix made to appellant, and avers that, through error, a portion of the property was omitted, but that he later attempted to correct that error and would do so. He denied that he took this property in trust for appellant but avers that he took it because his father desired him to do so on account of his having built up the business.

The master found, and the chancellor decreed, that appellant owned a one-fourth interest in lot 43 and the north

half of lot 44 of the warehouse property, and appellant complains that this amounted to a holding on the part of the chancellor that she has no interest in lots 36 to 42. This does not follow, as there is no controversy concerning her ownership of the interest in those lots deeded to her. They were conveyed by the original deed to her, which is not questioned.

Appellant contends that although time to compel the performance of her father's promise has not yet arrived, she is entitled, at this time, to have a decree fixing her rights and thus prevent the destruction of them. Appellees, in reply, urge the often-announced rule that to establish a constructive trust by parol evidence proof must be clear, convincing and so strong and unequivocal as to lead to but one conclusion, and they argue that the proof in this case has failed to meet the requirements of this rule. It is also urged that the dismissal of appellant's complaint does not in any way affect property theretofore deeded to her. Appellant, by her complaint, does not aver what character of trust arose by reason of the transaction between her grandfather and her father and herself. However, where property is conveyed to a grantee upon his parol promise to the grantor to convey that property to a third person, a court of equity will raise a constructive trust and convert the grantee into a trustee for the benefit of such third person. This is a rule well established in this State. Such an agreement may be oral. It is unnecessary, if properly proved, that it be in writing, but it comes within the exceptions to section 9 of the Statute of Frauds. (*Kern* v. *Beatty,* 267 Ill. 127; *Hilt* v. *Simpson,* 230 id. 170; *Stahl* v. *Stahl,* 214 id. 131.) While a constructive trust may arise on an oral agreement to convey land to a third person, it comes into existence only if, "(a) the transferee by fraud, duress or undue influence, induced the transferor not to create an enforcible interest in the third person, or, (b) the

transferee at the time of the transfer was in a confidential relation to the transferor." 2 Restatement of Trusts, chap. 10, sec. 183.

A constructive trust must be established by clear, unmistakable and convincing evidence, though the sufficiency of the proof does not depend upon the number of witnesses testifying, and the testimony of one witness, if clear and convincing, may be sufficient. The question before us, then, is whether the record in this case shows with satisfactory proof that such a trust exists. This depends upon whether it shows that the defendant Benjamin B. Felix took this property on the express promise to transfer it to his daughter. Appellant and her mother say he did. He says he did not; that there was no such understanding on his part, and that while he had intended, until his second marriage in 1936, that appellant should have the entire property, there was no understanding when he took the property that he should do so.

Harriet Felix, appellant's mother, testified that she prevented the execution of deeds from appellant's grandfather to her because she told him it was unfair to defendant Benjamin B. Felix. She states that this was a few days before the deed to Benjamin B. Felix was executed; that notary Wm. Tangney was present, and that as a result of her dissuading Franklin Felix from making a deed to appellant, no deed was made that day. This is the same notary who took acknowledgment in the deed to Benjamin B. Felix. He was called by appellant as a witness but stated that he had no recollection of being in the Felix home, but recognized his signature to the acknowledgment. Much of her testimony, and that of appellant, related to conversations with the grandfather out of the presence of defendant Benjamin B. Felix. There are a number of circumstances aside from that relating to the notary's testimony, which the master and chancellor doubtless considered as affecting the question whether, in fact, this trust exists. First, while from

the year 1917 until Benjamin B. Felix's second marriage in 1936, the record discloses many letters between him and appellant which show devotion and close relationship between them, they do not contain evidence tending to indicate that appellant made any claim of right in this property or the existence of a trust therein. The evidence offered by appellant tends to show that at different times Benjamin B. Felix had stated that the property was to go to appellant, because of the wishes of her grandfather. There, however, was no claim during those years, by either Harriet or appellant, that defendant Benjamin B. Felix held this property in trust for appellant. The deed to the one-fourth of the Felix three-fourths interest in the warehouse was made to appellant in 1926 as a part of a property settlement between Benjamin B. Felix and his then wife Harriet, on the ground, apparently, that she wished her daughter to have some of that property. The evidence does not show that this condition in the property settlement was imposed because appellant was the owner of the fee of that property by reason of the existence of a trust under which Felix held it, but rather tends to show otherwise.

The record also shows that about the time of and after the marriage of Benjamin B. Felix with Irene Hallberg, appellant consulted attorneys about the possibility of her father's disinheriting her. She seemed much disturbed at that time because she had, as she stated, learned that he had made a will which excluded her. She discussed those matters at length with witnesses Robert W. Schupp and Meyer Morton, attorneys. They testified that she said nothing about her father having taken the property in trust for her. As she was consulting them concerning her rights, about which she at the time seemed much concerned, it would be but natural, if she believed her father had taken this property for her, that she mention such fact to them.

Appellant also claims her father promised her $100,000 arising out of a sale of the business to his employees. This,

of course, she does not claim was a part of the transfer from her grandfather to her father. It is not seriously contended here that such an agreement is enforcible in law, but that it constitutes proof that he considered that he held the property from his father in trust for her.

The record is large and further analysis of the evidence would extend this opinion to lengths unjustified. The master in chancery and the chancellor have found that a constructive trust was not proved with that clarity required by law. Upon analysis of the evidence we are unable to say that the chancellor erred in that particular.

It is also urged that it was error to strike the deposition of Clark H. Bennett, offered by appellant. We have considered that objection but are unable to see wherein the chancellor erred in holding it incompetent.

Appellant also complains that the chancellor, by dismissing her bill for want of equity, took from her the one-fourth interest in the property known as the warehouse. As we have seen, by his answer Benjamin B. Felix admitted her ownership of that interest and set out that, through error, lots 43 and the north half of lot 44 were omitted, offering to make that correction. In his testimony, defendant admitted that he had deeded his interest in the warehouse to another but stated that the property remained under his control. The inference from his testimony is that he had an unrecorded deed redeeding the property to him. As the party to whom this property was deeded is not made defendant, a decree in this case cannot be made binding upon such grantee. However, as Felix admitted in his answer that he controlled property that belonged to the plaintiff and that it should be conveyed to her, and stated that he would so convey, the chancellor was not justified in dismissing the complaint without performance on the part of Felix.

Appellant also contends that the chancellor erred in decreeing the entire master's fees against her. The total mas-

ter's fee fixed by the court was $1637.50; $250 had been paid by the appellant and an execution was awarded against her for the sum of $1387.50. Included in this amount is an item for evidence offered by the defendant Benjamin B. Felix under a counter-claim filed by him alleging certain monies due him from the plaintiff. He dismissed this counter-claim after his evidence was taken by the master. It was error to charge the appellant with the master's fees as to the testimony and exhibits pertaining to that matter. Also, the master's certificate of claim for fees to be fixed by the court does not specify the amount of time employed by him upon the matters listed in the certificate. The court allowed a fee of $1000 requested by the master. Appellee's counsel say, here, that they have no objection to the fixing of the fees by this court in any manner or amount which it feels is just. While the sum of $1000 is substantial we have no means of knowing just what that fee should be, as there is no certificate as to the amount of time devoted to the matter by the master. While the fixing of such master's fee is largely within the discretion of the chancellor, yet such a certificate is necessary, as neither the chancellor nor this court, on review, can, without it, determine whether the fee asked is excessive. Nor are we able to determine what the statutory fees arising on the dismissed counter-claim should be, as that portion of the evidence is not here segregated. We find no further objection to the master's fees and no further error in the record.

The decree dismissing the bill for want of equity without the conveyance hereinbefore referred to was error, as was the fixing of the master's fees. For these errors the decree is reversed and the cause is remanded to the superior court, with directions to extend and fix the fees of the master in chancery in accordance with the views herein expressed and for further proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*