Benjamin G. Kilpatrick, Successor Trustee, Appellee, v. Isadore Edidin et al., Defendants. Appeal of Henry DeWachter, Appellant.

Gen. No. 41,781.

Opinion filed March 18, 1942. Rehearing denied April 1, 1942.

RATNER, MILLER & LEVENSON, of Chicago, for appellant; DAVID J. RATNER and GEORGE J. MILLER, both of Chicago, of counsel.

OTIS F. GLENN, J. ROY BROWNING and RAYMOND G. REAL, all of Chicago, for appellee; O. W. BARNES, of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On April 15, 1929, Isadore Edidin, Anna Edidin, his wife, Israel Edidin and Frieda Edidin, his wife, made and delivered a trust deed to the Reliance Bank and Trust Company, as trustee, to secure payment of $32,000, evidenced by 15 bonds for $1,000 each, 24 bonds for $500 each and 50 bonds for $100 each. These

bonds matured in from two to six years. The first bond was payable on July 22, 1931, and the last on July 22, 1935, and all bore interest at the rate of 6 per cent per annum, payable semiannually. The interest was evidenced by coupons. The trust deed conveyed real estate located at 2859–61 Palmer street, Chicago, improved with a brick building known as the Logan Apartments, consisting of six five-room apartments and a basement apartment. The bank failed and a receiver was appointed. Pursuant to the provisions of the General Banking Act, the bank, acting through its receiver, resigned as trustee under the trust deed. In accordance with the provisions of the trust deed, the holders of a majority in amount of the bonds then outstanding appointed Benjamin G. Kilpatrick as successor trustee. On July 27, 1933, the successor trustee filed his bill of complaint in the circuit court of Cook county, seeking to foreclose the lien of the trust deed because of defaults in the payment of principal, interest and taxes. In paragraph 11 of the bill of complaint plaintiff declares that he ''brings this suit for the foreclosure of the lien of the said trust deed for and on behalf of and for the use and benefit of each and every of the owners and/or holders of the said bonds and/or coupons.'' On June 26, 1940, almost seven years after the filing of the bill, Henry DeWachter was given leave to file an intervening petition. This petition alleged that he was the owner of one $500 bond and interest coupons attached thereto; that on June 24, 1940, he filed a complaint in the circuit court of Cook county, case No. 40C–5927, seeking a partial foreclosure of the trust deed for the payment of said $500 bond and interest coupons attached thereto, ''subordinate and inferior to the continuing lien of the trust deed for the security of all other unpaid bonds and interest coupons.'' Petitioner further stated that ''by virtue thereof he has acquired an interest in the real estate securing said trust deed in-

volved herein, which interest is subject, junior and inferior to the rights of the plaintiff herein and that your petitioner would therefore be a proper party defendant in the above entitled proceeding.'' The trustee answered the petition, denying that DeWachter had any right to intervene. The petition and answer were referred to a master who reported adversely to the contentions of petitioner. Objections to the report were overruled. On a hearing before the court, the objections were allowed to stand as exceptions and the exceptions were overruled. The court then approved the master's report, dismissed the intervening petition for want of equity, taxed the costs against intervenor, and entered a decree of foreclosure, placing all unpaid bonds on a parity and directing that the property be sold. This appeal followed.

The theory of the petitioner is that the provision of article 11 declaring that the exclusive right of action under the trust deed shall be vested in the trustee, refers to an action brought on behalf of all bondholders for a complete foreclosure, but not to an action brought by a single bondholder for a partial foreclosure; that in any event, under the express wording of article 11, this exclusive right of action exists only until the trustee has refused to act, after which the bondholder is entitled to enforce the trust deed in his own name; that no express authority for a partial foreclosure suit need be found in the trust deed since such right exists without any such express provision therefor in the instrument; that a partial foreclosure suit may be filed even though a bill for complete foreclosure is pending, and at any time until a decree is entered; that having filed his partial foreclosure suit the petitioner was entitled to intervene in the trustee's foreclosure proceeding for the purpose of bringing before the court the fact that by virtue of the action taken by him he had subordinated his bond to all other bonds, so that the amount thereof would not be included in

the sum found to be due to the trustee for the benefit of all bondholders. Plaintiff's theory is that article 11 of the trust deed limits the right of action under the trust deed to the trustee except where a party becomes the holder of interest coupons separate and apart from the ownership of a bond or bonds secured by the trust deed, as provided by article 9, or where the trustee refuses to act upon demand or has become disqualified to act for the holders of bonds and coupons. Plaintiff also contends that the language of article 11 is applicable to the facts of this case as the entire issue matured prior to the filing of the intervening petition, pursuant to a demand by bondholders other than intervening petitioner, the trustee filed a suit for complete foreclosure and prosecuted the suit to the entry of a decree of foreclosure, the intervening petitioner had full and complete notice and knowledge of the proceedings, the hearings before the master in chancery, and of the rule to close, proofs, and sat by and did nothing until he knew that a decree of foreclosure was to be presented for entry by the court.

The trustee's bill was filed pursuant to the written demand of the owners and holders of certain bonds and coupons secured by the trust deed, accompanied by a tender of indemnity in accordance with the provisions of such trust deed. The foreclosure case was prosecuted through master's hearings, a master's report was prepared and issued, and a decree of foreclosure was prepared and ready for presentation to the court. The intervenor and plaintiff stipulated before the master that petitioner received notice and had full knowledge of the proceedings in the foreclosure case, and knew of the hearings before the master and of the rule to close proofs. Despite this knowledge, petitioner failed to appear before the master during the presentation of the foreclosure case. It was further stipulated that the complaint for partial foreclosure was filed after the petitioner was

informed that a master's report in the original foreclosure case had been issued and a decree was about to be presented to the court for entry in accordance with such report. The sole defendant in the partial foreclosure suit is the holder of the legal title. No steps were taken to prosecute the subordinate foreclosure suit from the time of its filing until the date of the hearing before the master on the intervening petition.

Article 6 of the trust deed provides for the acceleration of maturity in the event of a partial default. Article 8 contains detailed provisions authorizing a complete foreclosure suit by the trustee and setting forth the rights of the parties thereunder. This article also states that "the various rights, powers, options, elections, appointments and remedies contained in this deed shall be construed as cumulative, and none of them is exclusive of the others or of any rights or remedies at law." Article 9 reads:

"9. It is further expressly understood, covenanted and agreed that in case the interest coupons hereinbefore mentioned and described, and any additional interest coupons executed upon any extension of said principal sum or sums, if extension thereof shall be made, shall become the property of any person or persons other than the holder or holders of said bond or bonds, or if disbursements shall be made as authorized hereby by any person other than the holder or holders of said bond or bonds then in that case this Trust Deed may be foreclosed for the amount due at any time upon said interest coupons or any of them, or for renewal interest coupons or any of them, for non-payment of said disbursements the same to all intents and purposes as though they and said principal sum were secured by separate deeds of trust: Provided, however, that any such foreclosure for any amount due upon interest coupons or renewal interest coupons, or for disbursements as aforesaid, shall be in all respects

secondary and subject to the lien of this Trust Deed for the security of the principal sum and any and all interest coupons and disbursements other than and in addition to those for which said foreclosure shall be had; and the continuing lien of this Trust Deed for the security of said principal sum and any of the said interest coupons or renewal interest coupons and disbursements other than and in addition to those hereby foreclosed, shall be in no wise affected thereby.'' Article 11 contains the following clause:

''The exclusive right of action hereunder shall be vested in said Trustee until refusal on its part to act, and no bondholder shall be entitled to enforce these presents in any proceeding in law or in equity until after demand has been made upon the Trustee accompanied by tender of indemnity as aforesaid, and said Trustee has refused to act in accordance with such demand. Said Trustee shall not be bound to recognize any person as a bondholder until his bonds have been deposited with said Trustee and until his title thereto has been satisfactorily established.'' Petitioner asserts that the right of partial foreclosure is firmly established in the law of this State; that the effect of a partial foreclosure suit is to subordinate the lien of the indebtedness upon which such suit is brought to the lien of all other indebtedness secured by the trust deed, to the same extent as though the former were secured by a separate mortgage, junior in lien; and that such partial foreclosure does not affect the rights of the owners of other unpaid bonds, interest coupons or other indebtedness secured by the trust deed. Plaintiff asserts that the right to partial foreclosure is recognized under the laws of this State only where the trust deed being foreclosed contains no provision limiting the enforcement of the provisions thereof exclusively to an action by the trustee, or where the trustee refuses to act or has been disqualified to act in behalf of the bondholders. The law is firmly established in

this State that a partial foreclosure may be maintained by an individual bondholder in the absence of a provision in the trust deed or the mortgage restricting such right. Our first inquiry, therefore, is to determine whether any language in the trust deed restricts the bringing of a partial foreclosure suit. It has been uniformly held that provisions of the kind relied upon by plaintiff are to be strictly construed. In so holding, this court in the case of *Boley v. Lake Street Elevated R. Co.*, 64 Ill. App. 305, at page 313, voiced these words of caution:

"Yet like other compacts strictly construed, they are not to be set aside by such reading as is opposed to the plain meaning of the language employed. Such is the subtlety of the human mind, that with a determined will so to do, there can always be read out of expressions what is clearly therein. It is not the province of the courts, with reference to the interpretation of constitutions, statutes or contracts, to do otherwise than to diligently search for, and honestly apply, the true meaning." Plaintiff urges that article 11 restricts all rights of action under the trust deed exclusively to the trustee except for the authorization contained in article 9 and the refusal or disqualification of the trustee to act. Petitioner leans heavily on the case of *Reliance State Bank v. Zisook*, 222 Ill. App. 610. The trust deed in that case contained identically the same provisions as are contained in articles 9 and 11 of the trust deed in the instant case. A reading of the opinion in the *Zisook* case shows that the Reliance State Bank filed its bill for a partial foreclosure as to certain bonds and interest coupons which came into its possession when it paid the holders thereof as such bonds and coupons matured. A decree for partial foreclosure was entered and the equity owners appealed. One of the contentions was that there could be no foreclosure by plaintiff without first declaring the whole of the principal sum due after default

and requesting the trustee to institute suit for foreclosure. The court found that there was ample proof of the refusal of the trustee to institute suit and of compliance with the condition under which a bondholder might institute the suit. The court pointed out that the plaintiff did not exercise its option to declare the whole of the principal sum secured by the trust deed, due and payable. The court said at p. 614:

"We find nothing in the trust deed that can reasonably be said to limit or restrict the right to a partial foreclosure. The fact that it provides for one by holders of interest coupons alone—a right they had without that express provision—cannot reasonably be construed to deprive the holders of matured bonds, or bonds and interest coupons—as to which on this question no distinction need be made—from exercising a right that exists without any express provisions in the trust deed therefor. (*Silverman v. Silverman,* 189 Ill. 394.) It would be an absurd construction of the trust deed to hold that while owners of interest coupons on which there had been a default could foreclose subject to a continuing lien for the rest of the debt, the owner of matured bonds on which there had been a default could not likewise foreclose subject to a like lien." The *Zisook* case is authority for the proposition that a trust deed similar to the one in the instant case does not contain language restricting a bondholder's right to foreclose as to his bonds without declaring the entire indebtedness secured by the trust deed to be due and payable. It will be noted that article 6 of the trust deed in the *Zisook* case and in the instant case provides that in case of default for a certain number of days in making payment of any of said bonds, either of principal or interest, "then the whole of said principal sum secured hereby shall at once (without notice thereof to any person interested) at the option of the holder of any of said bonds then unpaid, become due and payable." Clearly, this lan-

guage does not require the holder of a bond or coupon which is in default for 10 days to declare the entire indebtedness due and payable. The language gives the holder of any bond or coupon an option which he may or may not exercise. Frequently, it is better for all concerned that the option be not exercised. We are convinced that the instant trust deed, which is similar to the one in the *Zisook* case, permits a partial foreclosure.

The question still remains as to whether it is necessary for a bond or coupon holder who desires to prosecute a partial foreclosure under such a trust deed, to demand that the foreclosure suit be instituted by the trustee. It will be observed that in the *Zisook* case demand to foreclose was made on the trustee and the trustee declined. Hence, the plaintiff had a clear right to prosecute the partial foreclosure, the trustee having refused to do so. In the *Zisook* case the court was not called upon to decide whether a partial foreclosure could be maintained by the holder of a bond where no previous demand by the bondholder had been made. Defendants place great reliance on the case of *Dillon v. Elmore,* 361 Ill. 356. This was not a partial foreclosure case. The trust deed did contain clauses similar to the clauses in the *Zisook* case and in the instant case. The court said (361):

"The contract between the mortgagor, the bondholders and the trustee are contained in the trust deed before us. It prescribes the things to be done when a default occurs on the part of the debtor. A compliance with the terms of the trust deed is a necessary and legitimate requirement, and these provisions are enforcible as conditions precedent to foreclosure. The single exception to the exclusive right of the trustee to foreclose is contained in article 11. The bondholders must be held to have agreed that the privilege to foreclose in their own names was not granted to them but was provided against instead." The Supreme

Court was construing article 11 with respect to the right to prosecute a complete foreclosure. In that case, Joseph Dillon, a bondholder, sought to foreclose the lien of the trust deed on the theory that the trustee, a bank in process of liquidation, could not act. The chief contention revolved about the construction of section 11 of the Banking Act (sec. 11, ch. 16½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 10.11]). The *Dillon* case is not authority for the proposition that it is necessary for a bondholder desiring to prosecute a partial foreclosure, to first serve a demand that the trustee bring such an action. There is much to be said for the contention of petitioner that the language of article 11, vesting the exclusive right of action in the trustee until refusal on its part to act, contemplates a complete foreclosure and not a partial foreclosure. A provision such as that contained in article 11 is strictly construed and cannot be extended by implication. The parties have also discussed article 9, which permits a partial foreclosure by the holder of an interest coupon where such coupon "shall become the property of any person or persons other than the holder or holders of said bond or bonds." This article also permits a partial foreclosure where "disbursements shall be made as authorized hereby by any person other than the holder of said bond or bonds." This article does not say whether such partial foreclosure shall be brought by the trustee or the holder of such interest coupon, or by the person who made the disbursement. In the days when the trust deed in question was issued, it was the common practice of bankers and bond houses to purchase interest coupons as they were presented on maturity. These bankers and fiscal agents had in many instances sold the bonds. When the holders presented the interest coupons on the day of maturity, the bank would take up such coupon and retain it uncanceled until payment was in turn made to it by the owner of the property. The

provisions of article 9 were inserted apparently for the purpose of allowing the trustee or fiscal agent who took up the coupon at maturity, and which the mortgagor subsequently failed to pay, to proceed to enforce payment without foreclosing the entire issue. It also allowed the trustee, or any person who had been put to expense under the terms of the trust deed to recover such disbursement by partial foreclosure. Plaintiff argues that because article 9 limits a partial foreclosure to the situation there set out, the trust deed should be construed so as to exclude a partial foreclosure on any other ground. We have no doubt that under the trust deed before us a partial foreclosure may be prosecuted. Because of the view we take of the case, it is unnecessary for us to decide at this time as to whether in the prosecution of a partial foreclosure of the trust deed before us, it is necessary for the bondholder to first make a demand that the trustee bring such partial foreclosure suit.

Plaintiff insists that petitioner, having had notice and knowledge of the filing and prosecution of the complete foreclosure case, including the hearings before the master and the rule to close proofs, and having sat by and done nothing until the presentation of the decree, cannot in equity ask for a stay of such proceedings until he can complete a foreclosure to subordinate his bond and coupons. Plaintiff declares that the mere filing of the complaint did not subordinate the bond and coupons of the intervening petitioner. We agree that the complaint filed by petitioner did not explicitly subordinate his bond and coupons. It expressed the intent of petitioner that ''the decree of foreclosure herein shall operate to subordinate the lien and security of the trust deed as to the aforesaid bond and interest coupons owned by plaintiff to the lien and security of the trust deed in favor of the holder or holders of all other unpaid bonds and interest coupons outstanding thereunder, and with the in-

tent that any sale under a foreclosure decree herein shall be subject, junior and inferior to such continuing lien." The petition recites that the separate foreclosure suit "seeks a partial foreclosure for his own benefit as the owner of bond D-16 and interest coupons attached, secured by said trust deed, subject, subordinate and inferior to the continuing lien of the trust deed for the security of all other unpaid bonds and interest coupons." The succeeding paragraph of the intervening petition states that the petitioner "shows that by virtue thereof he has acquired an interest in the real estate securing said trust deed and involved herein, which interest is subject, junior and inferior to the rights of the plaintiff and that your petitioner would therefore be a proper party defendant in the above entitled proceeding." From the petition of June 26, 1940, it is clear that petitioner was subordinating his bond and interest coupons to the continuing lien of the other bond and coupon holders. Hence, at the time the chancellor ruled on the exceptions and entered the decree, it could not be seriously questioned that petitioner intended to subordinate his bond and interest coupons. By the express language of the petition and the answer thereto the bond and coupons were subordinated. Certainly, petitioner would be estopped to deny that he had subordinated such securities. Plaintiff is mistaken when he infers that the petitioner is asking for a stay of the complete foreclosure proceedings until petitioner can complete his subordinate foreclosure case. The record shows that petitioner did not object to the entry of the decree. He did ask that there be inserted in the decree a finding that his bond and interest coupons be not included in the amount due and owing to the trustee for the use and benefit of the bondholders, and that he, as the owner of bond D-16 and the interest coupons attached thereto, had elected to secure a partial foreclosure of the trust deed, and was entitled to prosecute his sep-

arate foreclosure suit subject and subordinate to the continuing lien of the trust deed, or of the decree of foreclosure to be entered, for the use and benefit of all other bonds and interest coupons.

Petitioner urges that plaintiff is in no position to complain that he (petitioner) sat by and did nothing toward prosecuting a subordinate foreclosure case until the presentation of the decree. The trustee filed his bill on July 27, 1933, and the partial foreclosure complaint was filed on June 24, 1940. Petitioner cites the case of *Skolnik v. Verran,* 297 Ill. App. 631 (Abst.) as authority for the proposition that the mere pendency of a trustee's bill for complete foreclosure is no bar to an action for partial foreclosure where such action would otherwise lie. We have read the record and the opinion in the *Skolnik* case. The record shows that on October 15, 1937, the trustee filed his complaint for a complete foreclosure, and that on December 13, 1937, Clara Skolnik filed her complaint for a subordinate foreclosure. On motion of the trustee her complaint was dismissed. She appealed and we reversed the decree of dismissal, holding that she had a right to maintain her action for a subordinate foreclosure. The trust deed in that case specifically authorized the holder of any one or more of the bonds or coupons to foreclose for the amount due upon any such bond or coupon. It is interesting to note that Clara Skolnik filed her complaint for partial foreclosure within two months of the time when the trustee's bill was filed. The facts in the *Skolnik* case are so different from the facts in this case that we do not regard the principle of law there announced as applicable to this case. At the time the complaint for a complete foreclosure was filed by the successor trustee (July 27, 1933), he was acting for all of the bondholders. The complaint declared that he brought the suit to foreclose the lien of the trust deed for and on behalf of all the bondholders. Hence, at the time

the trustee filed his complaint he was acting for petitioner, who was a bondholder. The case was not prosecuted for several years. This was not uncommon during the period of the depression. During this uncertain decade, allowing a case to lie dormant would not necessarily indicate laxity. On the contrary, delay was often advisable. There was no market for real estate and frequently the bondholders were not able to raise funds or make other suitable arrangements so that they could ask to have a decree entered and proceed to sale. The fact that the trustee did not prosecute the foreclosure case for several years does not necessarily show that he was remiss in the performance of his duty. Petitioner knew of the pendency of the case and what steps were being taken. The record does not show that he made a complaint about the delay. If he had a complaint, the chancellor was there to listen to him and would undoubtedly have required that the action be prosecuted if he determined that to do so would be for the best interest of the bondholders. Petitioner also knew that the case was being heard before the master and that costs and attorneys' fees were being incurred. He knew that these costs and fees would be a superior lien and would have to be paid from the proceeds of any sale before the bondholders could participate therein. Yet he allowed the trustee to proceed until the hearing before the master was concluded, the master's report prepared and the decree about to be entered, before filing a partial foreclosure. He did not offer to pay any part of the costs, fees and expenses incurred by the trustee while acting for all of the bondholders, including himself. We are of the opinion that under the circumstances, it would be inequitable to permit the petitioner to prosecute his subordinate foreclosure suit.

We call attention to the fact that section 52 of the Civil Practice Act (sec. 176, ch. 110, Ill. Rev. Stat.

1941 [Jones Ill. Stats. Ann. 104.052]) provides that plaintiff may, at any time before trial or hearing begins, upon notice and the payment of costs, dismiss his action or any part thereof without prejudice by order filed in the cause. This section also provides that after the trial or hearing begins, he may dismiss on the same terms, only upon filing a stipulation to that effect, or on the order of the court made on special motion in which the ground for such dismissal shall be set forth. Our view is that the instant case comes within the spirit of this section. The trustee, in the filing and prosecution of the complete foreclosure case, was representing petitioner. The effect of the granting of the prayer of the intervening petition would be to dismiss the petitioner from the case. As the motion was made after the hearing commenced, the granting of such motion was largely within the discretion of the court. The court refused the relief prayed for by petitioner and thereby in effect refused to permit him to be dismissed from the case. We are convinced that under the circumstances the chancellor did not abuse his discretion in dismissing the intervening petition.

Finally, petitioner maintains that the chancellor erred in fixing the master's fees incurred on the reference of the intervening petition in the sum of $70, and taxing the same as costs against him. Petitioner points out that the master does not attempt to itemize the amount of time spent in connection with each of the services stated to have been rendered, and that under the rule announced in *Litwin v. Litwin,* 375 Ill. 90, 96, and *Jones v. Felix,* 372 Ill. 262, 270, no allowance should be made on account of the service covered by the gross charge. Plaintiff replies that no objection as to the master's fees was made before the master or the court. Petitioner points out that the last paragraph of the decree recites that ''to all of which findings and orders including the taxing of costs

against the intervening petitioner and the amount of said costs, the intervening petitioner objects and excepts.'' This is a general objection to the entry of the decree and to the payment of any costs. If he urged the point before the chancellor, he should have brought before us a record showing the fact. He did not present such a record. Had the point been made, it is reasonable to assume that the chancellor would have required the master to itemize the charges. As the record does not show that the point was made, petitioner is in no position to urge it here.

Because of the views expressed, the decree of the circuit court of Cook county entered on February 11, 1941, is affirmed.

*Decree affirmed.*

HEBEL and KILEY, JJ., concur.