(No. 31818.

GEORGE H. RIDGELY *et al.*, Appellees, *vs.* CENTRAL PIPE LINE COMPANY *et al.*—(HOMER E. RIDGELY *et al.*, Appellants.)

*Opinion filed March 22, 1951.*

A. J. McMAHAN, and CHARLES R. VAUGHN, both of Olney, for appellants.

DONOVAN D. McCARTY, of Olney, and McGAUGHEY & McGAUGHEY, of Lawrenceville, for appellees.

* Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiffs, George H. Ridgely, the record owner of a forty-acre tract of oil land, and Mary Ridgely, his wife, lessors of an oil-and-gas lease, filed an amended complaint in the circuit court of Edwards County against the defendants, Central Pipe Line Company and R. B. Martin, the owners of the oil-and-gas lease, seeking an accounting of their one-eighth share of the oil produced. Ashland Oil and Refining Company, which acquired Central Pipe Line Company's interest in the lease during the pendency of the action, and Oscar Lamble, trustee under a deed in trust of an undisclosed interest in the lease, were also made defendants. By its answer, Central Pipe Line Company admitted stopping payments for royalty oil, averred that, by reason of adverse claims, it had impounded all funds otherwise due plaintiffs, and offered to pay the money so

---

* This opinion was prepared by the late Mr. Justice Wilson and has been adopted and filed as the opinion of the court.

withheld into court pending a determination of its ownership. In addition, Central Pipe Line Company filed a motion alleging that Homer E. Ridgely, George Ridgely's brother, claimed a one-half interest in the land, whereupon Homer E. Ridgely and Ethyl M. Ridgely, his wife, were made parties defendant. Martin and Lamble filed a joint answer averring that they had no interest in the controversy between George and Homer Ridgely.

By their answer and counterclaim, defendants Homer and Ethyl Ridgely, hereafter alone referred to as defendants, denied that George Ridgely was the sole owner of the land in question and sought the declaration of a constructive trust as to an undivided one-half interest in the property and separate accountings against plantiffs and their lessees. Subsequently, the court sustained plaintiffs' motion to strike the answer and counterclaim and, at the same time, granted defendants leave to amend. April 17, 1950, the court entered an order striking the amended answer and dismissing the amended counterclaim at defendants' costs. July 6, 1950, defendants made a motion to file a second amended answer and counterclaim but did not present a copy of the proposed pleading to the court. An order, dated July 20, 1950, (1) denied defendants' motion to file a second amended answer and counterclaim and (2) also adjudged that defendants take nothing by their first amended counterclaim and that plaintiffs go hence without day and recover their costs from defendants. Defendants prosecute a direct appeal from the order of July 20.

The first question requiring consideration is a determination of the issues involved upon this appeal. Although the notice of appeal extends to the order of July 20, generally, plaintiffs assert that the only issue properly before this court is whether the trial court abused its discretion in denying the motion of defendants to file a second amended counterclaim. Plaintiffs' position to the effect that the question of the sufficiency of the first amended counter-

claim is not involved in this appeal is founded upon the action of the trial court in dismissing the first amended counterclaim at defendants' costs on April 17 and the fact that no appeal has been taken from this order. While, standing alone, an order striking a complaint is not final, (*Calkin* v. *Roberts Park Fire Protection Dist.* 402 Ill. 579,) an order striking a complaint, dismissing the action and assessing costs is final. (*Doner* v. *Phoenix Joint Stock Land Bank,* 381 Ill. 106.) Although piecemeal appeals are not permitted, (*Walters* v. *Mercantile Nat. Bank,* 380 Ill. 477,) each case must be decided upon its own facts. (*Roddy* v. *Armitage-Hamlin Corp.* 401 Ill. 605.) In view of the circumstance that the original defendants, the lessees, were mere stakeholders and had no interest in the controversy between the present defendants and plaintiffs, it is evident that the order of April 17 dismissing defendants' counterclaim and assessing costs fully disposed of all the issues between all the parties and, consequently, was final and appealable.

No motion to vacate or modify the final order of April 17 having been made within thirty days after its rendition, the order thereupon become a conclusive adjudication and the trial court, although retaining jurisdiction of the rest of the case, lost jurisdiction over the counterclaim. (Ill. Rev. Stat. 1949, chap. 77, par. 82; *Barnard* v. *Michael,* 392 Ill. 130.) It does not necessarily follow, however, that the trial court had no jurisdiction to hear the motion of July 6 resulting in the order of July 20. The well-established rule, applicable here, is that where a court loses jurisdiction as the result of the expiration of thirty days following the entry of an order dismissing an action, the parties may, by appearing voluntarily and participating in further proceedings, revest the court with jurisdiction over their persons and the subject matter of the action. (*Brown* v. *Miner,* 408 Ill. 123; *Craven* v. *Craven,* 407 Ill. 252; *Rossiter* v. *Soper,* 384 Ill. 47; *Grand Pacific Hotel*

*Co.* v. *Pinkerton,* 217 Ill. 61.) By not interposing any objection to the jurisdiction of the court and appearing generally in opposition to defendants' motion to file a second amended counterclaim, plaintiffs waived their right to question the jurisdiction of the court. *Craven* v. *Craven,* 407 Ill. 252; *Grand Pacific Hotel Co.* v. *Pinkerton,* 217 Ill. 61.

Although, in the case at bar, no order was entered vacating the final order of April 17, this fact is immaterial. Since the court had no jurisdiction to entertain a motion to vacate a final order filed more than thirty days after the rendition of the order, it is manifest that it could not reacquire jurisdiction simply by sustaining a motion to vacate. The elements essential to revesting the court with jurisdiction are (1) the active participation by the parties without objection (2) in further proceedings inconsistent with the prior order of dismissal. As all further proceedings upon the merits of a previously dismissed action are inconsistent with a prior order dismissing the action, it follows that any further proceeding upon the merits of a cause operates to nullify the order of dismissal. The hearing on defendants' motion of July 6 was, therefore, sufficient to nullify the order of April 17. Consequently, the part of the order of July 20 adjudging that defendants take nothing by their first amended counterclaim and assessing costs against them was not a mere paraphrased repetition of the order of April 17 having no legal effect, but a true final order dismissing the action. The appeal being taken from the order of July 20, the question of the sufficiency of the first amended counterclaim is thus properly before us.

The facts well pleaded in the first amended counterclaim show that, in 1937, and for two years prior thereto, George and Homer Ridgely, hereafter referred to as plaintiff and defendant, respectively, were engaged in a farming partnership in Richland County, where they owned 120 acres of land, most of which was held in plaintiff's name. Plaintiff resided in Chicago, and defendant, who lived in

Olney, managed the business and hired an employee to operate the farm. Defendant was also interested in oil-and-gas leases and, in the course of this activity, received a verbal option to purchase for $400 the forty-acre tract in question, which is located in Edwards County about one mile away from the other farm in Richland County. He so advised plaintiff, while the latter was visiting in Olney, and, after inspecting the land together, they agreed to an equal joint purchase, plaintiff further agreeing to lend defendant his share of the purchase price. After returning to Chicago, plaintiff sent defendant a draft for $400 and, on September 27, 1937, defendant consummated the sale. At the direction of defendant, plaintiff was named as the sole grantee, defendant not wanting it known that he was buying land in the area because it might interfere with his efforts to obtain oil-and-gas leases. Defendant explained this to plaintiff when he delivered the deed, and plaintiff assured him he would receive his share of any income derived from the land. Subsequently, in August, 1938, defendant conveyed a lot in Olney to plaintiff in consideration of plaintiff's oral agreement to accept the lot in full satisfaction of the debt of $200 arising out of the purchase of the forty-acre tract.

From the time of its acquisition, the forty-acre tract in Edwards County was operated in conjunction with the principal farm in Richland County, taxes and other expenses being paid out of partnership funds and all income from the sale of crops being credited to the partnership account. In the summer of 1940, plaintiff moved to Richland County and took over the management of the business, continuing in this capacity until the dissolution of the partnership in May, 1941. Upon dissolution, the brothers segregated their interests in the principal farm by an exchange of deeds, but the land in Edwards County was not divided. After offering plaintiff $450 for his interest in this land, defendant received an inquiry from A. C. Reneau with respect to an

oil-and-gas lease. Defendant explained his interest in the land, assured the prospective lessee of his co-operation, and directed him to see plaintiff, the owner of record. Thereafter, on August 7, 1941, plaintiff gave Reneau an oil-and-gas lease on the property.

At a meeting of the parties on February 3, 1942, plaintiff refused defendant's proposal to divide their interests in the land and countered with an offer to reconvey the lot in Olney in consideration of defendant's execution of a release of his claim to any interest in the forty-acre tract. Defendant rejected the offer and, on the following day, caused to be recorded an affidavit setting forth his claim to an undivided one-half interest in the property. In March, 1942, at the request of the owners of the lease, who desired to dig a well, defendant ratified the lease, and, by a separate instrument, released the lessee from all liability for the payment of royalty oil. In each instrument, however, defendant expressly reserved his rights against plaintiff. The well produced oil in paying quantities and, by May 1, 1948, when the lessee began to withhold payments, plaintiff had received in excess of $16,000 as the lessor's share of the oil produced. Defendant has never received any part of the proceeds of the sale of royalty oil from either his brother or the owners of the lease.

The principal question presented is whether the facts pleaded are sufficient to establish a constructive trust. Constructive trusts are divided into two general classes, one where the trust is raised on the ground of actual fraud and, the other, where there is a confidential relationship and the subsequent abuse of the confidence reposed is sufficient to establish the trust. (*Kester* v. *Crilly*, 405 Ill. 425; *Steinmetz* v. *Kern*, 375 Ill. 616.) Defendant relies exclusively upon the fiduciary relationship arising out of his partnership with plaintiff, and plaintiff's subsequent abuse of his trust and confidence. Partnership is a fiduciary relation. (*McDonald* v. *McDonald*, 408 Ill. 388; *Doner* v. *Phoenix*

*Joint Stock Land Bank,* 381 Ill. 106.) No question is made as to the existence of a fiduciary relation between the parties at the time the property was acquired and, from the use of the tract for partnership purposes for a period of almost four years, it is equally plain that the transaction involved arose out of the relationship asserted. Plaintiff's subsequent refusal to divide the land or share the income with defendant constitutes the necessary abuse of trust and confidence prerequisite to the establishment of a constructive trust.

Although the manner in which plaintiff acquired title possesses many of the characteristics of a resulting trust, this does not prevent the raising of a constructive trust. In the light of other facts narrated, particularly the partnership relation and plaintiff's subsequent assurance to defendant with respect to receiving his share of the income from the land, defendant's act in taking title in the name of plaintiff, alone, is properly to be regarded as a manifestation of his trust and confidence in plaintiff. The fact that the breach of trust and confidence here may also be viewed as a breach of contract is, likewise, immaterial. While the mere breach of an agreement to convey land or to hold land for another is insufficient to create a constructive trust, (*Murray* v. *Behrendt,* 399 Ill. 22; *Stein* v. *Stein,* 398 Ill. 397,) where the agreement arises out of a fiduciary relationship and the failure to comply with the terms of the agreement constitutes a breach of trust and confidence, equity will raise a constructive trust. *Jones* v. *Felix,* 372 Ill. 262; *Suchy* v. *Hajicek,* 364 Ill. 502.

Seeking an affirmance of the decree, plaintiff contends that, in order to warrant the raising of a constructive trust on the ground of an abuse of trust, the parties standing in a confidential relationship must be a grantor and a grantee. This is not true. Equity looks to substance rather than form. Relief in the nature of the imposition of a constructive trust may be granted wherever there is an abuse

of confidence by one person standing in a fiduciary relation to another. The way in which the particular transaction arises is immaterial. As frequently announced, the mere existence of a fiduciary relation prohibits the one trusted from seeking or obtaining any selfish benefit for himself and affords a basis for fastening a constructive trust upon property so acquired. *Kester* v. *Crilly,* 405 Ill. 425; *Clark* v. *Clark,* 398 Ill. 592; *Steinmetz* v. *Kern,* 375 Ill. 616; *Suchy* v. *Hajicek,* 364 Ill. 502.

Plaintiff also asserts that the first amended counterclaim shows nothing more than a naked oral promise upon his part to convey an interest in land and contends that the oral promise is unenforceable by reason of the Statute of Frauds. As previously indicated, the pleadings show a fiduciary relationship and a subsequent abuse of trust and confidence. This is sufficient to raise a constructive trust. Constructive trusts are expressly excluded from the operation of the Statute of Frauds. Ill. Rev. Stat. 1949, chap. 59, par. 9; *Giese* v. *Terry,* 382 Ill. 34; *Jones* v. *Felix,* 372 Ill. 262.

As a second ground for sustaining his first amended counterclaim, defendant asserts that the facts are sufficient to establish a resulting trust. The contention made was not urged in the trial court and, under familiar principles, cannot be raised for the first time upon appeal. The alleged cause of action for a resulting trust may, however, be asserted upon remandment if defendant so desires.

The decree of the circuit court of Edwards County is reversed and the cause is remanded, with directions to overrule the motion to strike the first amended answer and counterclaim.

*Reversed and remanded, with directions.*